**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:18-CR-252-RDP-JEO-1** |
| | } | |
| **BOB COTCHERY, III,** | } | |
| | } | |
| Defendant. | } | |

## MEMORANDUM OPINION

In this criminal prosecution, the government charged Defendant Bob Cotchery, III with possessing 400 grams or more fentanyl with the intent to distribute it. For purposes of this opinion, everyone agrees that the evidence at trial was sufficient to show that Cotchery possessed some amount of fentanyl but insufficient to show that he possessed 400 grams or more of fentanyl.[1] At the government's request, the court instructed the jury that it could convict Cotchery if it found he possessed *any* amount of fentanyl with the intent to distribute it.

Cotchery moved for a judgment of acquittal at trial on the ground that the court's instruction constructively amended the indictment, in violation of the Fifth Amendment. The question presented by his motion is whether a constructive amendment occurs when the government charges a particular drug quantity in a prosecution under 21 U.S.C. § 841 but the court permits the jury to convict based simply on its finding that the defendant possessed the drug in question—without finding that he possessed the amount charged in the indictment.

As explained below, the court holds that no constructive amendment occurs under these circumstances so long as the defendant is sentenced under the statutory range authorized simply

---

[1] Also, for purposes of this opinion, Cotchery's mental state is undisputed—no one questions that he knowingly or intentionally possessed fentanyl (in whatever amount) with the intent to distribute it. For brevity, therefore, the court frequently omits any reference to mens rea when describing Cotchery's crime.

by the finding that the defendant possessed the drug in question—*i.e.*, without regard to quantity. A constructive amendment of the indictment occurs when a trial court instructs a jury that it may find an element of the charged offense satisfied by a broader range of facts than the government has alleged in the indictment. But drug quantity under § 841 becomes an "element" of the offense for Fifth Amendment purposes only if a quantity finding actually increases the defendant's punishment—either by subjecting him to a mandatory minimum sentence he would not otherwise face or by increasing his sentence beyond the otherwise-applicable statutory maximum. Because the court will sentence Cotchery under § 841(b)(1)(C) -- the penalty provision that applies when a defendant simply possesses fentanyl with the intent to distribute it, without regard to quantity -- drug quantity is not (and will not become) an element of Cotchery's offense for constructive amendment purposes. For that reason, the court's jury instruction did not constructively amend the indictment, even though it broadened the possible drug quantities Cotchery could be convicted of possessing beyond the quantity charged in the indictment. Cotchery's motion for a judgment of acquittal is therefore due to be denied.

## I.    Background

Cotchery was indicted in May 2018 on one count of violating 21 U.S.C. § 841(a)(1). (Doc. # 1). The indictment specifically charged that Cotchery "did knowingly and intentionally possess with the intent to distribute 400 grams or more of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, more commonly known as 'fentanyl,' a controlled substance." (*Id.* at 1). The charge in the indictment can be more succinctly stated as follows: "Cotchery did knowingly and intentionally possess with the intent to distribute 400 grams or more of fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)."

The indictment was based on the following events. In December 2017, Cotchery fled from police during a routine traffic stop, first in his car and then on foot. After apprehending Cotchery, police found a plastic bag containing an unknown substance under a nearby car. The evidence at trial, including testimony from an eyewitness bystander, showed that Cotchery hid the bag under the car before being apprehended by police. Investigators later determined that the substance in the bag contained fentanyl, a schedule I controlled substance.

At trial, the government called Carissa Stark, a forensic chemist from the Drug Enforcement Administration. Stark testified that the total weight of the substance Cotchery allegedly possessed with the intent to distribute was approximately 498 grams. She also testified that, although the mixture definitely contained a detectable amount of fentanyl and caffeine, she could not testify to the weight or purity of either substance. There was no further evidence at trial concerning the amount of fentanyl Cotchery possessed.

At the close of the prosecution's case, Cotchery moved for a judgment of acquittal under Federal Rule of Criminal Procedure 29. He argued that there was insufficient evidence from which a jury could find that he committed the crime charged in the indictment: possessing with the intent to distribute 400 grams or more of fentanyl. Specifically, he noted that Stark's testimony precluded any finding regarding the quantity of fentanyl contained in the 498-gram mixture he was alleged to have possessed, other than that he possessed some amount of fentanyl. And, Cotchery further argued, to permit the jury to convict him simply by finding that he possessed a detectable amount of fentanyl (without finding the quantity charged in the indictment) would be to constructively amend the indictment.

The government responded by noting that the statute Cotchery was charged under only requires proof that he possessed 400 grams or more of *a mixture or substance containing* a

detectable amount of fentanyl. *See* 21 U.S.C. § 841(a)(1), (b)(1)(A)(vi). Specifically, § 841(a)(1) makes it unlawful to knowingly or intentionally possess with the intent to distribute "a controlled substance." Section 841(b)(1)(A) then provides that in the case of a violation of § 841(a) involving "400 grams or more of a mixture or substance containing a detectable amount of [fentanyl]"[2] the offender "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A)(vi). Because the proof at trial was sufficient to show that Cotchery possessed 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, the government argued, Cotchery's motion for judgment of acquittal was due to be denied.

Pursuant to Rule 29(b), the court reserved decision on the motion and allowed the trial to proceed. Before the case was submitted to the jury, Cotchery again renewed his Rule 29 motion, and the court heard argument on the issue from both Cotchery and the government. A key disagreement between Cotchery and the government concerned the appropriate instructions to give the jury. Cotchery argued that, if the court sent the case to the jury at all, the court must instruct the jury that it could convict him only if it found beyond a reasonable doubt that he possessed with the intent to distribute 400 grams or more *of fentanyl*, as charged in the indictment. Cotchery maintained that to instruct the jury it could convict if it found he possessed "400 grams or more of a mixture or substance containing a detectable amount of [fentanyl]," as § 841(b)(1)(A) permits, would constitute a constructive amendment of the indictment. The government conceded on the record that the evidence was insufficient to establish that Cotchery possessed 400 grams or more of fentanyl. But it argued the jury should be instructed based on the

---

[2] The statute uses the chemical name of the drug, "N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide." 21 U.S.C. § 841(b)(1)(A)(vi). But for simplicity, the court will use the drug's common name: fentanyl.

language of § 841(b)(1)(A) rather than the language of the indictment, and that the case should be submitted to the jury on that basis.

While reserving decision on Cotchery's Rule 29 motion, and after making clear on the record the government's concession that it could not prove Cotchery possessed 400 grams or more of fentanyl, the court decided to submit the case to the jury using the government's preferred instruction.[3] The court instructed the jury that Cotchery could be found guilty only if the government proved beyond a reasonable doubt that he knowingly possessed a mixture or substance containing a detectable amount of fentanyl and intended to distribute the mixture or substance containing a detectable amount of fentanyl. If the jury found Cotchery guilty of that crime, a second question on the verdict form asked the jury to make a finding regarding the weight of the substance he possessed. Part two of the verdict form allowed the jury to choose between the following weights: (1) a mixture or substance containing a detectable amount of fentanyl weighing 400 grams or more or (2) a mixture or substance containing a detectable amount of fentanyl weighing less than 400 grams. (Doc. # 47). The court informed Cotchery's counsel that it would take his Rule 29 motion under advisement and issue a ruling after the jury returned its verdict.

The jury found Cotchery guilty of possessing a detectable amount of fentanyl with the intent to distribute it. With respect to quantity, the jury found that Cotchery had possessed a mixture or substance containing a detectable amount of fentanyl weighing 400 grams or more. (Doc. # 47).

---

[3] This decision was largely driven by trial management principles. The court only submitted the case to the jury in this manner after the government conceded that the evidence was insufficient to convict Cotchery of possessing 400 grams or more of fentanyl. By securing that concession and submitting the case to the jury using the government's preferred instruction, the court preserved the full range of the parties' arguments for post-trial briefing, while eliminating the need to retry the case (no matter the court's ultimate ruling on the issue). This course of action also permitted the jury to find whether Cotchery possessed the controlled substance of fentanyl with the intent to distribute it.

The amount of fentanyl a person is charged with possessing under § 841 can have a tremendous impact on his sentence. Section 841(b) provides for three different levels of punishment for violations of § 841(a) involving fentanyl, depending on the amount involved. 21 U.S.C. § 841(b)(1)(A)–(C). If the crime involves 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, the offender shall receive a prison sentence of 10 years to life. *Id.* § 841(b)(1)(A). If the crime involves 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, the offender shall receive a prison sentence of 5 to 40 years. *Id.* § 841(b)(1)(B). And finally, if the crime involves "a controlled substance in schedule I or II" -- that is, *any* amount of fentanyl -- the offender shall receive a prison sentence of not more than 20 years. *Id.* § 841(b)(1)(C).

There is no question the jury's finding in this case -- that Cotchery possessed with the intent to distribute 400 grams or more of a mixture or substance containing a detectable amount of fentanyl -- would ordinarily authorize a sentence under § 841(b)(1)(A) of 10 years to life. But the indictment did not charge that Cotchery possessed 400 grams or more of a mixture or substance containing a detectable amount of fentanyl. It instead charged that Cotchery possessed 400 grams or more *of fentanyl*. Thus, the question is whether the court constructively amended Cotchery's indictment by permitting the jury to convict him based simply on its finding that Cotchery possessed a detectable amount of fentanyl—without finding that he possessed 400 grams or more of fentanyl, as charged in the indictment.

## II.    Analysis

The court's analysis proceeds in three parts. First, the court explains that a trial court constructively amends an indictment in violation of the Fifth Amendment by instructing a jury that it may find an element of the charged offense satisfied by a broader range of facts than the

government has alleged in the indictment. Second, the court explains when drug quantity becomes an element of an offense under 21 U.S.C. § 841 for Fifth Amendment purposes. Third and finally, the court explains that no constructive amendment occurred in this case, provided that Cotchery is sentenced under the penalty provision that applies when a defendant simply possesses fentanyl with the intent to distribute it, without regard to quantity.

## A. What Constitutes a Constructive Amendment of an Indictment

The Fifth Amendment provides: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury . . . ." U.S. Const. amend. V. That guarantee, the Supreme Court has long held, means that "a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." *Stirone v. United States*, 361 U.S. 212, 217 (1960) (citing *Ex parte Bain*, 121 U.S. 1 (1887)). Consequently, "after an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* at 215–16.

It has long been recognized that a trial court's admission of evidence and its jury instructions may constructively amend an indictment. *Id.* at 218–19; *United States v. Weissman*, 899 F.2d 1111, 1114 (11th Cir. 1990). A constructive amendment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990). Put differently, a court may not through its jury instructions alter an essential element of the offense charged in the indictment by broadening the range of facts that will satisfy that element beyond the facts alleged in the indictment.

Two Supreme Court cases helpfully illustrate what counts as a constructive amendment and what doesn't. In *Stirone*, the defendant was charged with Hobbs Act extortion. 361 U.S. at

213–14. One element of Hobbs Act extortion is unlawful interference with interstate commerce. *Id.* at 218. The indictment charged that the interstate commerce with which Stirone unlawfully interfered was sand shipments to Pennsylvania. *Id.* at 213–14. But at trial, the government offered evidence that Stirone interfered with both sand shipments to Pennsylvania and steel shipments to Michigan and Kentucky. *Id.* at 214. Further, the trial court instructed the jury that it could convict Stirone if it found that he interfered with *either* sand shipments to Pennsylvania *or* steel shipments to other states—even though the indictment alleged only that Stirone interfered with the Pennsylvania sand shipments. *Id.* The Supreme Court held that the trial court's jury instructions constructively amended the indictment because they broadened the factual basis upon which the jury could convict Stirone beyond the facts alleged in the indictment. *Id.* at 218–19. The Court reasoned that when a Hobbs Act indictment charges that a defendant unlawfully interfered with "only one particular kind of commerce," "a conviction must rest on that charge and not another." *Id.* at 218. That was so, the Court explained, even if "under an indictment drawn in general terms a conviction might rest upon a showing that commerce of one kind or another had been burdened." *Id.*

*United States v. Miller*, 471 U.S. 130 (1985), by contrast, shows that no constructive amendment occurs when an indictment's charges are *narrowed* at trial, rather than broadened. Miller was charged with submitting fraudulent insurance claims following a robbery at his place of business, in violation of the mail fraud statute. *Miller*, 71 U.S. at 131–33. The indictment alleged two methods by which Miller defrauded his insurer: (1) consenting to the burglary in advance and (2) lying to the insurer about the value of his loss. *Id.* at 132. But at trial, the government only offered proof concerning the second method. *Id.* The jury convicted Miller and he appealed, arguing that the government's proof at trial had varied fatally from the fraudulent

scheme alleged in the indictment. *Id.* at 133–34. The Supreme Court, however, affirmed Miller's conviction. *Id.* at 145. It held that no constructive amendment occurred because the facts proved at trial were simply narrower than those alleged in the indictment, but fell squarely within the factual allegations contained in the indictment. *Id.* at 138–40.

Although the Eleventh Circuit has not squarely addressed the precise constructive amendment issue presented in this case, the Circuit's more general constructive amendment precedent is well developed. The Eleventh Circuit has consistently found a constructive amendment where a trial court instructs a jury that it may find an element of the charged offense satisfied by a broader range of facts than the government has alleged in the indictment. Six cases are particularly instructive.

In *United States v. Salinas*, the defendant was charged as an accomplice under 18 U.S.C. § 656, which outlaws the misapplication of bank funds by bank employees. 654 F.2d 319, 321–22 (5th Cir. 1981).[4] One element of accomplice liability under § 656 is that the accomplice willfully aid and abet a bank employee in taking actions that violate § 656. *Id.* at 323. The indictment charged that Salinas satisfied this element by willfully aiding and abetting a bank president, Lewis Woodul, in the misapplication of bank funds. *Id.* at 322. But the evidence at trial showed that it was not Woodul who misapplied bank funds and whom Salinas aided and abetted. *Id.* at 323. It was actually the bank's vice president, James Robert Nance, whom Salinas aided and abetted in the misapplication of bank funds. *Id.* But instead of granting Salinas's motion for a judgment of acquittal, the trial court instructed the jury that it could convict Salinas if it found he "willfully aided and abetted *the principal*" (not specifically Woodul) in misapplying bank funds. *Id.* (emphasis added).

---

[4] The decisions of the former Fifth Circuit published on or before September 30, 1981 constitute binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

The jury convicted Salinas under the court's instructions, but the former Fifth Circuit reversed the conviction, holding that the jury instructions had constructively amended the indictment in violation of the Fifth Amendment. *Id.* at 323–25. The Fifth Circuit explained that the trial court's instructions "in effect allowed the jury to convict if it found that [Salinas] aided and abetted the misapplication of funds by *any* officer, director, or employee of the bank." *Id.* at 323 (emphasis added). But the indictment had not charged that Salinas aided and abetted *some* bank employee in the misapplication of funds; it specifically alleged that he aided and abetted Woodul in the misapplication of funds. And because "[a]n essential element of the crime of aiding and abetting the misapplication of bank funds is that the named principal in fact misapplied these funds," the trial court constructively amended the indictment by permitting the jury to convict based on a finding that Salinas aided and abetted someone other than Woodul in the misapplication of bank funds. *Id.* at 324–25.

In *Weissman*, the defendants were convicted of RICO conspiracy. 899 F.2d at 1112. One element of a RICO conspiracy is the existence of an "enterprise" engaged in or affecting commerce. *Id.* at 1114 (quoting 18 U.S.C. § 1962(c) (West 1984)). The indictment charged that the defendants were "associated with an enterprise, to wit, a group of individuals associated in fact known as the DeCavalcante Family of La Cosa Nostra." *Id.* at 1112, 1115 (internal quotation marks omitted). The trial court initially instructed the jury that it could find the defendants guilty of RICO conspiracy if (among other things) it found that the defendants were associated with "the enterprise." *Id.* at 1113. The trial court then gave the legal definition of the term "enterprise" and explained that the indictment in this case "defines the enterprise as a group of individuals associated in fact as the DeCavalcante Family of La Cosa Nostra." *Id.*

After retiring to deliberate, however, the jury asked the trial judge whether "enterprise" and "DeCavalcante Family" as used in the court's instructions were "synonymous." *Id.* The trial court called the jury back into the courtroom and instructed that "in order for the Government to get a conviction" it was "not necessary" for it to show "that the DeCavalcante Family was the enterprise." *Id.* All the prosecution had to show, according to the trial court, was that "there was an enterprise as the enterprise term is defined in your instructions." *Id.* Even though the government "did allege [the DeCavalcante Family] was the enterprise," the trial court explained, "it isn't necessary for [the government] to prove that the enterprise was the DeCavalcante Family if there was an enterprise proved that meets the definitions of the term." *Id.*

Following the supplemental instruction, the jury convicted several of the defendants of RICO conspiracy. *Id.* But the Eleventh Circuit reversed their convictions, holding that the trial court's supplemental instruction constructively amended the indictment. *Id.* at 1113–16. The proper response to the jury's query, the Eleventh Circuit explained, would have been to inform the jury "that the enterprise in this case, in conformity with charges brought in this indictment, was synonymous with the DeCavalcante family." *Id.* at 1115. By broadening the factual basis on which the jury could find the "enterprise" element satisfied from just the DeCavalcante family (as expressly alleged in the indictment) to any enterprise, the trial court "in effect altered an essential element of the crime charged," thereby constructively amending the indictment. *Id.* (internal quotation marks omitted).

*Keller* involved charges that two defendants conspired to rob a bank. 916 F.2d at 630 (describing count three of the indictment). One element of conspiracy is, of course, that two people agree to commit a crime. *Id.* at 634. The indictment in *Keller* specifically alleged that Keller and his codefendant "Smith" agreed to commit an offense against the laws of the United

States (namely, bank robbery). *Id.* at 632. The evidence at trial indicated that Keller conspired to rob the bank in question with his getaway driver, but the identity of the getaway driver was uncertain. *Id.* at 636. The trial court, however, instructed the jury that it could convict Keller and Smith on the conspiracy charge so long as there was an agreement to rob the bank "between *some two people*," even if Keller and Smith had not agreed with *each other*, as the indictment alleged. *Id.* at 635 (emphasis in original). The jury ultimately convicted Keller but acquitted Smith on the conspiracy charge. *Id.* On appeal, the Eleventh Circuit reversed Keller's conviction on the ground that the trial court's instructions constructively amended the indictment. *Id.* at 636. The constitutional problem with the trial court's jury instructions was clear: they "altered an essential element of the offense and thereby broadened the possible bases for conviction of Keller by allowing the jury to convict him if he conspired with anyone, when the indictment alleged he conspired solely with Smith." *Id.*

In *United States v. Cancelliere*, the defendant was charged with two counts of money laundering in violation of 18 U.S.C. § 1956. 69 F.3d 1116, 1118 (11th Cir. 1995). Though the money laundering statute does not require proof that the defendant acted "willfully," the government mistakenly charged in the indictment that Cancelliere "knowingly and willfully" committed the offense of money laundering. *Id.* at 1119–21 & n.3. At the government's request, the trial court redacted the word "willfully" when instructing the jury on the money laundering charge. *Id.* at 1119–20. The Eleventh Circuit reversed Cancelliere's conviction on appeal, holding that the redaction constructively amended the indictment. *Id.* at 1121–22. Even though the government "need not have" alleged willfulness to convict under the money laundering statute, the government *did* allege willfulness and therefore "must be charged with proving it." *Id.* at 1122. Because "changing the requirement from proof of 'knowingly and willfully' to

'knowingly' impermissibly broadened the bases for Cancelliere's conviction," the trial court's jury instruction constructively amended the indictment. *Id.* at 1121.

In *United States v. Narog*, the defendants were charged with various offenses involving the possession and distribution of pseudoephedrine. 372 F.3d 1243, 1246 (11th Cir. 2004). A common element of all the offenses was that the defendants intended, knew, or had reasonable cause to believe that the pseudoephedrine would be used to manufacture "a controlled substance." *Id.* But the indictment specifically alleged that the defendants possessed pseudoephedrine intending, knowing, or having reasonable cause to believe that it would be used to manufacture a *particular* controlled substance: "that is, methamphetamine." *Id.* After it began deliberations, the jury asked the trial judge whether the defendants were required "to have knowledge or reasonable cause to believe the pseudoephedrine would be used to make *specifically* methamphetamine to be guilty." *Id.* at 1247 (emphasis in original). The district court answered "no" and instructed the jury that "the government need not prove that a Defendant knew or had reasonable cause to believe the exact nature of the controlled substance to be manufactured." *Id.* Instead, all the government was required to prove was that "a Defendant knew or had reasonable cause to believe that the pseudoephedrine would be used to manufacture *some* controlled substance." *Id.* (emphasis added). The Eleventh Circuit held that this jury instruction constructively amended the indictment and reversed the defendants' convictions. *Id.* at 1247–50. By including the phrase "that is, methamphetamine" in the indictment, the Eleventh Circuit reasoned, "the government essentially charged a subset of the statutory crime." *Id.* at 1249. And "[b]y instructing the jury that it only needed to find that defendants knew or had reasonable cause to believe that the pseudoephedrine would be used to make *any* controlled

substance, the district court unconstitutionally broadened the crimes charged in the indictment." *Id.* (emphasis added).

Finally, in *United States v. Madden*, the indictment charged the defendant with knowingly possessing a firearm *in furtherance of* a drug trafficking crime. 733 F.3d 1314, 1318 (11th Cir. 2013). But the trial court instructed the jury that it could convict if it found the defendant knowingly carried a firearm *during and in relation to* or in furtherance of a drug trafficking crime. *Id.* The Eleventh Circuit held that by adding "during and in relation to" (which did not appear in the indictment) to its jury instructions, the trial court "broadened the possible bases for conviction beyond what was specified" in the indictment, thereby constructively amending the indictment. *Id.* That was so, the court explained, because the phrase "'in furtherance of' is narrower than 'during and in relation to.'" *Id.*

The foregoing cases firmly establish the following rule: a trial court constructively amends an indictment in violation of the Fifth Amendment by instructing a jury that it may find an element of the charged offense satisfied by a broader range of facts than the government has alleged in the indictment. In this case, the indictment charged that Cotchery knowingly possessed *400 grams or more* of fentanyl with the intent to distribute it. However, at the government's request, the court instructed the jury that it could convict Cotchery if it found he knowingly possessed *a detectable amount* of fentanyl with the intent to distribute it. A "detectable amount" of fentanyl is unquestionably broader than "400 grams or more" of fentanyl: the former captures all but the most miniscule amounts of fentanyl, while the latter is limited to those amounts of fentanyl equal to or greater than 400 grams. Thus, the court's jury instruction would constitute a constructive amendment of the indictment *if* the amount of fentanyl Cotchery possessed is an element of the offense charged in the indictment.

Resisting this conclusion, the government relies on *United States v. Sanders*, 668 F.3d 1298 (11th Cir. 2012). But *Sanders* does not contravene the rule identified above. The indictment in *Sanders* charged that the defendant conspired to knowingly and intentionally possess with the intent to distribute "a controlled substance," and further charged that the conspiracy "involv[ed] at least five (5) kilograms of cocaine." *Id.* at 1311. The trial court instructed the jury that the defendant did "not have to know specifically the nature of the particular drug that he's possessing, but must know that it is a controlled substance." *Id.* at 1307 n.6, 1309. The Eleventh Circuit held that the instruction did not constructively amend the indictment because the indictment did not charge that the defendant *knew* the particular drug involved in the conspiracy was cocaine; it merely charged that the particular drug involved was *in fact* cocaine. *Id.* at 1312 ("[The] indictment fairly read is not charging that [the defendant] had *knowledge* of [the] type or amount of drug but is charging that the overall conspiracy involved that type and amount of drug.") (emphasis in original). *Sanders* thus does not contravene the rule identified above because the indictment alleged only that Sanders conspired to knowingly possess a controlled substance, not that he knew the controlled substance involved was cocaine.

Thus, whether a constructive amendment occurred in this case turns on whether the amount of fentanyl Cotchery possessed is an element of the offense charged in his indictment. The court now turns to that question.

**B. When Drug Quantity Becomes an Element Under 21 U.S.C. § 841**

Within broad constitutional limits, "the definition of the elements of a criminal offense is entrusted to the legislature, particularly in the case of federal crimes, which are solely creatures of statute." *Staples v. United States*, 511 U.S. 600, 604 (1994) (brackets and internal quotation marks omitted). In 21 U.S.C. § 841(a), Congress made it a federal crime "for any person

knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, *a controlled substance*." 21 U.S.C. § 841(a)(1) (emphasis added). Then, in § 841(b), Congress prescribed various penalties for "any person who violates subsection (a)," depending on (among other things) the type and quantity of the controlled substance involved in the § 841(a) violation. *Id.* § 841(b). Under this statutory scheme, the presence of a "controlled substance" is "a distinct element" of a § 841(a) drug offense. *United States v. Sanchez*, 269 F.3d 1250, 1264 (11th Cir. 2001) (en banc). That means that, in any § 841(a) prosecution, the government must charge and prove the existence of "an actual 'controlled substance' of some quantity involved in that drug offense." *Id.* But the Eleventh Circuit has consistently held that Congress did not intend to make either the identity or the quantity of a controlled substance a statutory element of a § 841(a) offense. *Id.* at 1265–67. Those facts are instead mere "sentencing factors" used in fixing the penalty for the commission of a § 841(a) offense. *Id.* Simply put, the statute Congress wrote only requires proof that some controlled substance was involved to sustain a conviction under § 841(a). *Id.* at 1266.

But notwithstanding the statute a legislature wrote, the Supreme Court has held that the *Constitution* requires some facts to be treated as elements of a crime that must be proved to a jury beyond a reasonable doubt—even if the legislature intended those facts to be treated merely as sentencing factors. *Apprendi v. New Jersey*, 530 U.S. 466, 490, 494 & n.19 (2000). Specifically, the Sixth Amendment requires any fact that increases the mandatory minimum or statutory maximum sentence for a crime to be treated as an element of the crime and proved to a jury beyond a reasonable doubt. *Id.* at 490; *Alleyne v. United States*, 570 U.S. 99, 103, 111–16

(2013).[5] And in federal prosecutions, the Fifth and Sixth Amendments require that those same facts "also be charged in the indictment." *United States v. Cotton*, 535 U.S. 625, 627 (2002); *see also United States v. Brown*, 752 F.3d 1344, 1351 (11th Cir. 2014) (explaining that "any facts that increase the penalty for a crime beyond the prescribed statutory maximum . . . are essential elements of the offense that must be included in the indictment . . . .") (brackets and internal quotation marks omitted); *United States v. Gayle*, 967 F.2d 483, 485 (11th Cir. 1992) (en banc) (explaining that the Fifth and Sixth Amendments require a criminal indictment to "set forth the essential elements of the offense").

There is no question the quantity of fentanyl a defendant is charged with possessing under § 841 can increase both the mandatory minimum and statutory maximum sentence imposed on the defendant. A defendant who possesses any amount of fentanyl with the intent to distribute it "shall be sentenced to a term of imprisonment of not more than 20 years." 21 U.S.C. § 841(b)(1)(C).[6] But a defendant who possesses 400 grams or more of fentanyl, as the government charged in this case, "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." *Id.* § 841(b)(1)(A)(vi).[7] Under *Apprendi*, *Alleyne*, and *Cotton*, then, the quantity of fentanyl Cotchery possessed appears at first glance to be an element of the crime Cotchery's indictment charged him with committing. And, if the amount of fentanyl

---

[5] The only exception to this rule is for the fact of a prior conviction. That fact alone need not be proved to a jury beyond a reasonable doubt; it may instead be found by the sentencing judge. *Alleyne*, 570 U.S. at 111 n.1 (citing *Almendarez-Torres v. United States*, 523 U.S. 224 (1998)).

[6] Section 841(b)(1)(C) applies when the drug involved in the § 841(a) violation is "a controlled substance in schedule I or II." 21 U.S.C. § 841(b)(1)(C). Fentanyl is a schedule I controlled substance, and a violation of § 841(a) involving any amount of fentanyl therefore triggers § 841(b)(1)(C)'s sentencing range.

[7] The statute actually mandates an enhanced sentence of 10 years to life if the § 841(a) violation involves "400 grams or more of a mixture or substance containing a detectable amount of [fentanyl]." 21 U.S.C. § 841(b)(1)(A)(vi). But of course, a § 841(a) violation involving 400 grams or more of pure fentanyl (as the government alleged in this case) would also require a sentence of 10 years to life under § 841(b)(1)(A). The reason is obvious but worth stating explicitly: a substance weighing 400 grams that is pure fentanyl necessarily contains a detectable amount of fentanyl.

Cotchery possessed is an element of the offense charged in his indictment, then, as discussed above, the court's instruction to the jury that it could convict Cotchery if it found he possessed merely a detectable amount of fentanyl (rather than the 400 grams or more alleged in the indictment) would constitute a constructive amendment of the indictment.

The Eleventh Circuit's en banc decision in *Sanchez*, however, establishes that drug quantity is not *always* an element of an offense under § 841. In that case, two defendants were charged with conspiring to violate § 841 by possessing with the intent to distribute the controlled substances methamphetamine and amphetamine. *Sanchez*, 269 F.3d at 1252–53. Their indictment, however, failed to allege the specific quantity of drugs involved in the crime. *Id.* The defendants challenged their convictions and sentences based on *Apprendi*, and the Eleventh Circuit granted en banc review to address "whether, in light of *Apprendi*, drug quantity is now always an element of an offense under § 841 that must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 1252. The en banc court answered that question in the negative, holding that drug quantity becomes an *Apprendi* element of a § 841 offense only when a defendant actually receives a sentence above the prescribed statutory maximum under § 841(b)(1)(C)—the penalty provision that applies when a § 841(a) violation simply involves a controlled substance in schedule I or II, without regard to quantity. *Id.* at 1270, 1275–76. Because the *Sanchez* defendants received sentences that were less than 20 years (the statutory maximum under § 841(b)(1)(C)), the court affirmed their convictions and sentences notwithstanding the indictment's failure to allege drug quantity. *Id.* at 1257, 1275–79, 1289.

*Sanchez*'s holding rested on a narrow reading of *Apprendi*. *Id.* at 1261, 1263. Though the Supreme Court in *Apprendi* "endorse[d]" the rule that "[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to

which a criminal defendant is exposed," 530 U.S. at 490 (internal quotation marks omitted), the Eleventh Circuit in *Sanchez* noted that *Apprendi*'s holding was actually narrower than that rule, 269 F.3d at 1261, 1263. Specifically, *Sanchez* read *Apprendi* as holding only that a trial judge may not *actually increase* a defendant's sentence above the otherwise-applicable statutory maximum based on a fact that was neither alleged in the indictment nor submitted to the jury. *Id.* at 1261, 1263, 1267–68, 1275. So long as a defendant does not actually receive a sentence above the otherwise-applicable statutory maximum based on an unalleged or judge-found fact, that fact does not become an element of the offense under *Apprendi*, and it need not be charged in the indictment. *Id.* at 1275.

Thus, under *Sanchez*, a fact that merely "expose[s]" a defendant to a higher statutory maximum penalty does not become an element of the offense unless the defendant actually receives a sentence above the otherwise-applicable maximum. *Id.* at 1263, 1276. That remains true, *Sanchez* held, even if the trial court actually sentences a defendant under the enhanced statutory range triggered by the unalleged or judge-found fact, so long as the defendant's ultimate sentence could have been imposed under the unenhanced statutory range without finding that fact. *Id.* at 1276 (explaining that "being sentenced under § 841(b)(1)(A) or § 841(b)(1)(B) and being potentially exposed to a higher sentence under either section do not create *Apprendi* error" unless an unalleged or judge-found fact "actually increases the defendant's sentence beyond the statutory maximum in § 841(b)(1)(C)").

So, under *Sanchez*, the amount of fentanyl Cotchery possessed does not become an element of his offense for purposes of the Fifth and Sixth Amendments unless the court actually sentences Cotchery to more than 20 years' imprisonment, the maximum sentenced allowed under § 841(b)(1)(C) for violations of § 841(a) involving any amount of fentanyl. That drug quantity is

not always an element of a § 841 offense should come as no surprise. After all, when the government does not seek enhanced penalties under § 841(b)(1)(A) or (B), the quantity of a schedule I or II controlled substance involved in a § 841(a) offense *never* becomes an element of the crime. *Id.* at 1275 ("Both before and after *Apprendi*, in any § 841 case, an indictment charging that a defendant violated § 841 properly charges a complete federal crime without any reference to either drug type or quantity."). According to *Sanchez*, *Apprendi* merely placed "an external constitutional restraint" on the *sentence* a defendant may receive when his indictment omits any reference to drug quantity. *Id.* at 1268. It did not transform drug quantity into a § 841 offense element in every case. *Id.*

    *Sanchez*, however, is not the last word on when a fact becomes an element of an offense for purposes of the Fifth and Sixth Amendments. A later Supreme Court decision, *Alleyne v. United States*, 570 U.S. 99 (2013), is in tension with *Sanchez*'s narrow reading of *Apprendi*. Though the court concludes that *Alleyne* did not undermine *Sanchez* to the point of abrogation, it does hold that *Alleyne* slightly modified the rule established by *Sanchez*.

    *Alleyne* extended *Apprendi*'s holding from facts that increase the statutory maximum sentence for a crime to facts that increase the mandatory minimum sentence. *Alleyne*, 570 U.S. at 111–12. Alleyne was charged with using or carrying a firearm in relation to a crime of violence. *Id.* at 103. That crime carries a 5-year mandatory minimum sentence (with a maximum sentence of life in prison), which increases to a 7-year mandatory minimum if the firearm is "brandished" and to a 10-year mandatory minimum if the firearm is "discharged." *Id.* at 103–04 (quoting 18 U.S.C. § 924(c)(1)(A)); *id.* at 112. A jury convicted Alleyne and "indicated on the verdict form that Alleyne had 'used or carried a firearm during and in relation to a crime of violence,' but did not indicate a finding that the firearm was 'brandished.'" *Id.* at 104 (brackets omitted). But at

sentencing, the district court nonetheless found "that the evidence supported a finding of brandishing, and sentenced Alleyne to seven years' imprisonment" under § 924(c). *Id.*

The Supreme Court vacated Alleyne's sentence, holding that facts which increase the mandatory minimum sentence for a crime are elements of the offense and must therefore be found by the jury beyond a reasonable doubt. *Id.* at 117. Because Alleyne was subjected to a 7-year mandatory minimum sentence based on a fact that was found by the trial judge rather than the jury, the Supreme Court vacated Alleyne's sentence and remanded the case "for resentencing consistent with the jury's verdict." *Id.* at 118.

Much of the Supreme Court's reasoning in *Alleyne* is inconsistent with *Sanchez*'s holding that a fact becomes an element of a crime for Fifth and Sixth Amendment purposes only if the defendant *actually receives* a sentence that could not have been imposed in the absence of that fact, and not if the defendant is merely *exposed* to an enhanced sentence but not subjected to one.

The majority in *Alleyne* began by quoting *Apprendi*'s conclusion that "any 'facts that increase the *prescribed range* of penalties to which a criminal defendant is *exposed*' are elements of the crime." *Id.* at 111 (emphasis added). The majority found it "indisputable that a fact triggering a mandatory minimum alters the prescribed range of sentences to which a criminal defendant is exposed." *Id.* at 112. "[B]ecause the legally prescribed range *is* the penalty affixed to the crime," the majority concluded, "it follows that a fact increasing either end of the range produces a new penalty and constitutes an ingredient of the offense." *Id.* (emphasis in original). *Sanchez*, by contrast, held that drug quantity does not become an element of a § 841 offense simply because that fact increases the prescribed range of penalties to which a defendant is exposed, so long as the sentence the defendant actually receives could have been imposed with no drug quantity finding. 269 F.3d at 1275.

*Alleyne* went on to expressly reject the argument that a fact does not become an offense element if a defendant's ultimate sentence "could have been imposed with or without" finding that fact. 570 U.S. at 114. "[T]he essential Sixth Amendment inquiry," the Court explained, "is whether a fact is an element of the crime." *Id.* And "[w]hen a finding of fact alters the *legally prescribed punishment* so as to aggravate it, the fact necessarily forms a constituent part of a new offense . . . ." *Id.* at 114–15 (emphasis added). "It is no answer," the Court stated, "to say that the defendant could have received the same sentence with or without that fact." *Id.* at 115.

Similarly, *Alleyne* also reasoned that a fact which increases "the legally prescribed range of allowable sentences" "constitutes an element of a separate, aggravated offense that must be found by the jury, regardless of what sentence the defendant might have received if a different range had been applicable." *Id.* at 115. "Indeed," the Court explained, "if a judge were to find a fact that increased the statutory maximum sentence, such a finding would violate the Sixth Amendment, *even if the defendant ultimately received a sentence falling within the original sentencing range* (*i.e.*, the range applicable without that aggravating fact)." *Id.* at 115 (emphasis added). Under *Alleyne*, whether a defendant could have received the same sentence under a different sentencing range is simply "beside the point" when it comes to determining which facts are offense elements for purposes of the Sixth Amendment. *Id.* at 114.

Contrary to *Sanchez*'s earlier approach, *Alleyne*'s reasoning suggests that the elements of an offense for purposes of the Fifth and Sixth Amendments are determined *ex ante* based on whether a particular fact increases the legally prescribed range of punishments, not *ex post* based on whether the sentence a defendant actually received could have been imposed without a particular factual finding. Under this reasoning, it does not matter, for purposes of *Apprendi*, whether a defendant's ultimate sentence in a § 841 prosecution could have been imposed without

a finding of drug quantity. What matters is whether a drug quantity finding alters the legally prescribed range of punishments to which a defendant is exposed. If it does, then drug quantity is an element of the crime.

Both *Sanchez* and *Alleyne* are binding on this court. The prior precedent rule governs which decision a court must follow when a previous decision of the Eleventh Circuit is in tension with a later Supreme Court case. Under that rule, courts in the Eleventh Circuit must follow a previous decision of the Eleventh Circuit "even when a subsequent Supreme Court case weakens that decision," but they "are bound to follow a Supreme Court decision that undermines [Eleventh Circuit] precedent to the point of abrogation." *Overlook Gardens Properties, LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1201 (11th Cir. 2019). The question is thus whether *Alleyne* merely weakens *Sanchez* or instead undermines it to the point of abrogation.

The court concludes that *Alleyne* modifies *Sanchez*'s rule but does not entirely abrogate it. Under the prior precedent rule, a Supreme Court decision "must be clearly on point" to overrule a previous panel or en banc holding of the Eleventh Circuit. *Inversiones y Procesadora Tropical INPROTSA, S.A. v. Del Monte Int'l GmbH*, 921 F.3d 1291, 1301 (11th Cir. 2019) (internal quotation marks omitted). Additionally, "the intervening Supreme Court case [must] actually abrogate or directly conflict with, as opposed to merely weaken," the prior holding of the Eleventh Circuit. *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009). The reasoning of *Alleyne* is no doubt in tension with *Sanchez*; however, *Alleyne*'s holding only "directly conflict[s]" with *Sanchez*'s rule in one narrow respect, as explained below. *Id. Alleyne* therefore modifies, but does not entirely abrogate, *Sanchez*'s rule. *See United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008) (explaining that "[t]here is a difference between the holding in a case and the reasoning that supports that holding" and concluding that "[e]ven if

the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide [a basis to depart] from [the] prior decision").

*Sanchez* held that drug quantity is not an *Apprendi* element of a § 841 offense for federal indictment purposes if the defendant is ultimately sentenced below the statutory maximum that applies in the absence of a drug quantity finding. 269 F.3d at 1275. But *Alleyne* held that a fact is an *Apprendi* element if a defendant is subjected to an otherwise-inapplicable mandatory minimum based on that fact, even if the sentence the defendant ultimately receives is below the statutory maximum that applies without finding that fact. 570 U.S. at 117–18. *Alleyne* therefore modifies *Sanchez*'s rule in the following way: After *Alleyne*, drug quantity under § 841 becomes an "element" of the offense for Fifth Amendment purposes only if a quantity finding actually increases the defendant's punishment—*either* by subjecting him to a mandatory minimum sentence he would not otherwise face *or* by increasing his sentence beyond the otherwise-applicable statutory maximum. Where a drug quantity finding does not actually result in a defendant being sentenced under an enhanced statutory range, drug quantity is not an element of a § 841 offense for Fifth Amendment purposes. Put differently, where neither the floor nor the ceiling of the statutory range used by the district court in imposing a defendant's sentence is actually increased by a drug quantity finding, drug quantity is not an element of the offense.

### C. Because the Court Will Sentence Cotchery Under § 841(b)(1)(C), No Constructive Amendment Occurred in This Case

Under *Sanchez*'s rule (as modified by *Alleyne*), drug quantity does not become an element of a § 841 offense for purposes of the Fifth and Sixth Amendments unless a drug quantity finding actually results in a defendant either (1) being subjected to a mandatory minimum sentence he would not otherwise face or (2) having his sentence increased beyond the otherwise-applicable statutory maximum. Thus, drug quantity never becomes an element of a

§ 841 offense if a district court ultimately sentences the defendant under § 841(b)(1)(C)—the penalty provision that applies when a § 841(a) violation merely involves "a controlled substance in schedule I or II," without regard to drug quantity. 21 U.S.C. § 841(b)(1)(C). Because the court will sentence Cotchery under § 841(b)(1)(C), drug quantity will not become an element of his offense for purposes of the Fifth Amendment. And because drug quantity is not an element of Cotchery's offense, the court's instruction that the jury could convict Cotchery if it found he possessed any amount of fentanyl with the intent to distribute it (rather than 400 grams of fentanyl as charged in the indictment) did not constructively amend the indictment in violation of the Fifth Amendment.

## III. Conclusion

The court will sentence Cotchery for his crime under 21 U.S.C. § 841(b)(1)(C). For the reasons explained above, that means no constructive amendment of the indictment occurred in this case. Cotchery's motion for a judgment of acquittal on that basis is therefore due to be denied. A separate order will be entered.

**DONE** and **ORDERED** this July 19, 2019.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE